The next matter is In Re Odyssey Contracting Corporation, Helen L. Painting v. Odyssey. And again, I hope I'm pronouncing this correctly, Mr. Joujoulis? Correct. Mr. Joujoulis, proceed. May it please the Court, Chris Joujoulis representing the Appellate Odyssey Contracting Corp. I would request three minutes for rebuttal. Granted. Your Honor, there are basically three issues that I would like to discuss. Jurisdiction, the stipulation, and the general municipal law 106B. Actually, 106B2 is the most pertinent part. From a jurisdictional point of view, this Court has jurisdiction under 1291. What makes you think this was a final order? I'm sorry, Your Honor. What makes you think this was a final order? Because the Court said so. There's nothing left. It dismissed the appeal. But then you don't serve any purpose as an appellate court. I'm sorry. We can never go home. We can never go home in that case. Well, it's a final order for purposes of this appeal to this Court. I think what the Court did, and we had some trouble trying to figure out what the District Court actually did. Because at one point. Well, excuse me. Who drafted the stipulation that is critical? It was in the Bankruptcy Court before the hearing. It was drafted by L&L, you'll see there. I understand it was part of Judge Bohm's. Yeah, it was part of it. Who drafted it? I believe both attorneys. L&L actually sent the draft over initially. And presented it to the Court. It was part. No, both attorneys presented it to the Court. That's what I said. Yes. You had a role in drafting the stipulation. Absolutely. This is the ordinary course with a stipulation. Absolutely, Your Honor. It's not a stipulation unless both parties or all parties agree to it. Absolutely. No question. And we're not contesting the substance of the stipulation for the simple reason its intent was to create finality for purposes of expediting the appeal. Yes. Let's stop right there. That was important. It wasn't expediting. Correct. In fact, it was important to Judge Bohm. Expediting, wasn't it? Correct, Your Honor. Judge Bohm had in front of her a case that had a significant portion of it lagging in the New York State court system for about seven years or more than seven years, didn't she? Not unusual in New York courts, Your Honor. Well, not unusual in courts in various parts of the country, but so sad commentary on civil litigation that that can be the case. And she did express a concern that she and the parties act in such a way that at least this piece of the bankruptcy over which she had jurisdiction was resolved in an expedited fashion. If I may, I'd like to refer to the record. There was a pretrial conference. Yes. At that pretrial conference, Mr. Speer, who was one of the attorneys for L&L, stated clearly at page 382 of the record, he said, if Odyssey wins, we will appeal and there will be no end. In that hearing as well, the court was very concerned about the cost that were being incurred. In fact, the court even said at some point a little past that page where it said, I'm concerned even if we if Odyssey wins because of the protracted litigation. Well, if Odyssey wins, then there's a lot more left to do, isn't there? Just a trial and damages. Is that just a trial and damages in a bankruptcy case? Isn't that rather an important piece? It is an important piece. But that's one of the one of the things here that was apparent to everyone. I mean, there would not have been finality if Odyssey had won as opposed to L&L winning. Right. Well, no, there would have been finality on the liability and on the breach. And because this was a case, you know, is there a breach? What's the issue is with the payments, the state's payments for the painting of the bridge. If if that goes away, what's left? There was there were four of the claims. There was a conversion of equipment claim of about two point eight million as part of your bankruptcy. I mean, as part of the adversary proceeding, there was a an insurance rebate of about six hundred fifty thousand. And there was a third item profit on the fourth phase of the of the bridge. So there were three other pending claims at the time. And those are independent of the procedures for the percentages for payment. Right. Has nothing to do in terms of. Let me just fast forward to that, to the GMO with regard to those payments, because there are no there are no factual disputes relative to this case with regard to that particular issue. They're all we. In fact, we put together free trial. I think 10 pages of stipulated undisputed facts. Were you the trial person, the person that I tried to catch? And so you lose before Judge Bohm and she says, do a status report within three weeks and some other things. And instead of complying with that, you immediately appeal. Why did you do that? Not just do the stuff that the judge asked you to do. I think that that's what the judge asked to do. We would come at the end of all legal proceedings, including those. But it wasn't like six months. It was three weeks. And just it's like you're ignoring the process. And I'm just going to appeal because I don't want I'm just like you're upset that you lost. And we're just going to appeal right now. No, the extent we couldn't exchange releases because that would put an end. That would that would be almost like consent judgment, which the stipulation was not exactly. What ambiguity is there in paragraph one of the stipulation, which says above Judge Bohm's name. In the event this court determines after trial that Odyssey was the breaching party and that's what happened, then L&L's damages claim for the said breaches will be deemed to exceed Odyssey's damages claims for all of its claims, including its claims, A, against L&L and federal for alleged nonpayment for work performed and other alleged breaches, and B, against L&L for alleged conversion of Odyssey's equipment and tools and other property. And thereupon, all the parties pending claims will be withdrawn and disposed of in their entirety with prejudice by L&L and Odyssey, respectively. That's the whole ballgame, isn't it? No, Your Honor. And I'll explain why. Because those words are consistent with creating finality to expedite the appeal. There is no in order when you. I'm sorry, Your Honor. That's not what she said. That's not what she said. There's not and there's not a word in here that refers to an appeal. It's not a conditional waiver at all. In order to waive one's appellate rights. Absent a consent judgment, you need to have a clear expression here. Do you really think that a bankruptcy judge who has demonstrated a concern for the amount of time it has taken to resolve this case, and who has acted in such a way that this matter can be expedited, would be suggesting with that language that, yes, but this only goes so far. You can then appeal my determination. You really think that's what she's signing off on? Can I again refer to the record on this matter? Because I think the court realized it at page 394 and 395 of the record. The court. And I'm worried because I think even if I, at the end of the line, even if we fine for this debtor, the appeals and the time will hurt. That's what I'm concerned about. It's that conclusion of litigation could hurt them even if they win. And that's a concern. And earlier, again, at that page 382, after Mr. Speer had said that they will appeal, and that's at 383. So the court, I'm going to read what Mr. Speer said. Mr. Speer said at page 382. And if they win, there will be an appeal and nothing is going to end. Then the court says, I think. Stop right there. If they win, means that now we've got to move on to damages, too. It's not going to be resolved by this stipulation, right? Yes, there has to be a trial. There was still much to be done if they win. Yes. But here is what I think the district court did in its decision on page 2, Your Honor. It took basically a pragmatic approach. What it did, it modified the order to make it final. So it constitutes, the exact phrase, it modified so as to constitute a dismissal of the adversary proceeding. So the court basically adopted the bankruptcy court's decision. But it also said at page 2, on the second full paragraph, the last sentence, at bottom, the court is left with the specific circumstances presented and common sense notions of judicial administration and fairness. I think the court realized the importance of this case, that it would be resolved in the court of appeals, the issue of breach, the issue of the GML, which is a critical part of this case. Then why the language in paragraph 1 of the stipulation? I'm sorry? Then why that language in the paragraph 1 of the stipulation? To create finality. There was no waiver of appellate rights, which you need. You need an expression, a clear expression of waiver. But if damages haven't been assessed against you, how is the matter final? I mean, I realize, having done bankruptcy, that there is more of a practical viewpoint on finality. But here there's a whole lot left to do before the debtor here, Odyssey, can go up to the district court. Yes, you lost. But then you have to determine damages. You have to do the status report with the judge. You have to get these things done. The damages is not ministerial, right? It's inconceivable that managers would be ministerial. Isn't that right? Other than the contract balances, yes. The contract balances were basically admitted to. There was a retainage of $2.1 million and $1.6 million in contract balances. That was pretty much. So isn't that game set and matched with respect to finality? You jumped the gun. If there's a lot to do with respect to damages, and damages are not ministerial, then there cannot be finality, even in the bankruptcy context. And you've got to complete the game before you can go up to the district court. I think it would only be, that would only hold true if Odyssey had won. There was nothing else for Odyssey to accomplish at that point. Going forward with this. Doesn't L&L have possible, does L&L have possible damages? No, Your Honor. Because it realized right off the bat, and in the same pre-trial hearing, in fact it said, we have no upside. There is no upside. In fact, that was one of the reasons. It was a scheduling. L&L wins, which it did. Correct. There's no damage determination to be made. If Odyssey wins, there is a damage determination. Correct, Your Honor. That requires further process, and hence stands in the way of finality. Except that the order. I'm looking at paragraph two. In the event that the court determines after trial that Odyssey was the breaching party, which it did, the parties withdrawal and disposition of the respective claims shall include all their damages claims for alleged non-payment of breach of contract conversion and any other alleged wrongdoing, and any other charges, et cetera. So, I don't know. It looks like the bankruptcy court was trying to get the slate cleaned up in order that you could have a final judgment. Well, from my understanding of the bankruptcy decisions in an adverse, and we put it in our main brief right on the first page, that in effect, that was final decision for appeal purposes because it's just a discrete portion of the bankruptcy case that's been finalized for appeal. If you are so right, why didn't you put into stipulation that you reserve the right to appeal? That would only be necessary if there was a consent judgment. We don't have a consent judgment. No, no, no. It's a stipulation. Where do you get that as a principle of law for many cases? We've cited it in our brief. If you have, if you stipulate. One of the most annoying answers to a question that we ask is. No, I want to. Go get our briefs. No, no, no. I'm going to address it. If you give me a half a second, I will refer to the brief. Actually, the most annoying response is when we hear, well, I don't know, Your Honor. I wasn't counsel at the time, but that's not the case here. I was counsel. That's what I'm getting to. The stipulation, the intent of the stipulation, because I was there and I was at a pretrial hearing. We got you. We understand. Yes. So back to your question. When you stipulate and provide for a mechanism of fact-finding by a court, you can't possibly have a consent judgment. That's the classic definition that it's not. You need to settle like the Koltek case. I believe Your Honor was on it. Your Honor was on it. Yes. But you couldn't have had a consent judgment at the time the stipulation was entered into because the trial that Judge Bowman conducted wasn't done yet. Correct. That's my point. So that stipulation can't possibly be a consent judgment. So we try the case. We're not treating it as such. Well, they're arguing it as such. They are arguing it as such. Our questions have not been directed in that way. But what happens here, the language in the stipulation is consistent with expediting the appeal for finality purposes. Before we hear from the other side, it's not just a stipulation, though, is it? I mean, given this controversy over whether or not this is a consent order, this is more than a stipulation. This often occurs in a trial where you stipulate to something that is evidentiary, but it doesn't ultimately dispose of anything. It just becomes like any other piece of evidence that is admitted into the trial proceeding. But this is a stipulation and order. Doesn't and order add some additional weight to this stipulation? Certainly. It's been accepted by the court. It's been approved by the court. Yes, but one's appellate rights are not aborted by that stipulation. In fact, the intent was because, Your Honor, the back story, practicalities, we had four or five days scheduled for trial. And this case would have taken at least three weeks. And for the purposes of judicial economy and the cost to the litigants, this was basically to streamline the process to know, are we going to win on liability or are we going to lose on liability? Because if we lose on liability and we lose on appeal on liability, the case is over. Where's the efficiency if you lose on liability, are able to appeal and prevail on appeal and then have to go back and try it all over again? Where's the efficiency? You only try damages. You never try liability again. It's only the damage portion that gets tried. Well, what are you appealing then? We're appealing now the decision on liability. But if that's a return and we win on liability. And what's the result of it? Well, no. The result is a damage trial. No. Let's say. I think. We don't necessarily determine that you win. We may determine that the matter needs to be retried. Correct. Where's the efficiency in that? There is no efficiency in that. But that wasn't the intent. Like any other agreement, the stipulation has an intent. And the intent was to create finality to expedite an appeal. We'll have you back on rebuttal. Thank you. Mr. Fastenberg. Good morning. May it please the court. Charles Fastenberg. Appearing for appellees. L and L Painting Co Inc. And federal insurance. Thank you. You didn't address the finality issue in your brief, did you? I believe that we. I believe that we did. Certainly in the jurisdictional part. We argue that it is moot. And that's something I'd like to discuss right now in response to counsel's statements. Mootness and finality are two distinctly different concepts. The point. Mootness has constitutional. Yes, of course. Article three, not equitable mootness. But the point I wanted to get across, particularly in response to the statements just made, is that Odyssey has treated the stipulation as though it were only a dispute resolution mechanism. Nowhere. Within its two briefs. Has it acknowledged or specifically addressed the expedited case disposition language, the with prejudice language. The exchange mutual releases language. The shall be deemed concluded in all respects language. So it just turns as judge Bassoon said, turns a blind eye. To the case disposition language and calls the stipulation as inviting a final order. Yes. Judge Bassoon set out three possibilities. Yes. As to what may be. Yes. Right here. Right. Yes. And they were what. And she fixed on which one of the three. Well, she fixed on certainly. And we have not referred to that in our briefs. That was for judge Bassoon. But basically, I think what she was saying was that they just wanted to have the stipulation both ways. If they if they win. So, you know, good for them. And if they don't win, they'll just turn to turn a blind eye. And that's what we're saying now. So you have referred to certain provisions or some language in certain parts of the stipulation just a few minutes ago. And let me focus on one that you referred to and that you indicate your adversary has ignored. I think the last line or rather the next to the last paragraph, too. And this proceeding shall be deemed finally concluded in all respects. Yes. What do you maintain that? What that means to us and what we said about it in our brief is that if Judge Boehm after trial finds Odyssey to be the breaching party, the adversary proceeding is ended over. But it says proceeding as opposed to dispute. It doesn't say this dispute shall be deemed to be funded. This proceeding is obviously what's before the district before the bankruptcy court. Yes. The adversary proceeding, which I would assume. So how does that help you? Is really what I'm asking. The case is over. Over may be a matter of finality for which you have a right to appear. Right. Even with prejudice. I think it helps us in the sense that the case is concluded with prejudice. And here's I think the more dispositive response to the question. Odyssey is required by its promise within the stipulation and by Judge Boehm's post-trial order, as well as Judge Boehm's pre-trial order, to exchange releases of all of its claims. And what we're saying now jurisdictionally and with regard to appealability is that the claims on both sides have to be released. There's nothing left to appeal. There's no predicate for an appeal. Everything has to be released. And here we are two years later. That never happened. That never happened. Now, obviously, the arguments that are being made could have been brought up on a rule 60 or a rule 16 motion at any time. They could have had their day in court on the issues that they now present to this court. That never happened. Oddly, as vociferous as they've been about those arguments, they've never been presented in a proper forum. So it would seem that if they filed prematurely prior to there being a final order of the bankruptcy court, final judgment, that you would have filed immediately a motion to dismiss saying, hey, we're not done. You didn't do that. Why was that? Your Honor, I'm sorry. I'm not sure I follow that. Our position is we are done. They filed prematurely an appeal. And you're saying there's stuff still to be done here. I mean, based on what Judge Bowman. No. I may have a misunderstanding. Please forgive me. My position, our understanding is that we are done. We are done. What's appealable in our view. Okay. So that would be. Not the merits. That would be your reasoning. But what you filed with us is saying, looks like maybe what the district court did was withdraw the reference. But you can't do that absent there being cause. And there was. That's a major thing. It's only been done in a few cases. And only one that was really significant when it happened in Delaware in 1997 or so.  It's a big thing when you withdraw a reference. May I address that? Because I have looked at that question. Okay. Go ahead. I hope I understand it. I believe that the question of withdrawal of the reference. In my somewhat limited view. Is a close question. Arguable both ways. On one hand, it is true. That Judge Bassoon stayed within section 157. And that, I suppose, would support the point that's being made. On the other hand, the circumstances are a little bit different, I think, than the typical withdrawal scenario. Number one, we were. The parties had their day in court. We were after trial. Judge Bassoon did not strike out in a different direction from the bankruptcy court. But was simply trying to implement the party stipulation in Judge Boehme's order. So it's a tough situation. Now, my answer to the question is, I don't know and I can't say yes or no on withdrawal of reference. I do think it's a close call. But we will say this, respectfully. If it were considered to be a withdrawal of the reference, we would argue. And we feel strongly that the good cause factors are there. Those are the factors we cited at page 1168 of the Pruitt decision. Uniformity in the bankruptcy process. Expedited decisions in the bankruptcy process. Protect the party's resources. We certainly have that here. But in Pruitt, there was a reversal. And actually, the court used the rarely used remedy of mandamus. Correct. Wait a minute. No, no, no. You can't do what you just did in considering this to be final. Absent withdrawal. Yes. With cause. I mean, do you know, have you ever heard of a withdrawal that's done impliedly? Withdrawal of the reference that's done impliedly? I haven't. Well, I'm going to say two things. First of all, this case is very, very different than Pruitt. And let me just. But the first question, have you ever heard of a withdrawal of the reference by a district court? Done impliedly, that is, without an order. No. With a statement of cause. No, but I've heard of modifications in the cases cited by Judge Bassoon and in subsequent cases. But may I say two things quickly? First of all, in Pruitt, it's quite true. There was a reversal, but absolutely no cause was shown in Pruitt. In this case, Judge Bassoon made quite clear what the circumstances were. That's number one. Number two, in Pruitt, all that was up for appellate review was the decision to defer to the state court. Not the merits. Here, Odyssey argues, based on Pruitt, that this court can jump right into the merits without any certification, et cetera. We disagree with that. But most importantly, here's my real answer. That's the idea of a certification? Because I was just thinking about that. And why wasn't that? Why didn't someone try to get a certification to us? Well, our position, we were not looking to advance an appeal. That's a question I would think for Odyssey. They didn't. I mean, obviously, Judge Bassoon, when Judge Bassoon says her conclusion is immovable, that the appeal is improper, and she refers to the appeal as a putative appeal in that footnote at the last page, apparently she would not have been amenable to issuing a certification for appeal. We certainly were not looking to bring this to the next level. But if I may get back, the point I wanted to make about withdrawal is, yes, I would say that it's uncertain, as I've said before. But we think that the withdrawal issue that you raise is preempted or resolved or whatever word, overscored, whatever the word is, by judicial estoppel, which we have cited. We think that under the Montrose medical case, judicial estoppel is an inherent court power. We think it's absolutely warranted here. How does judicial estoppel play out here? Well. What would be the argument that somehow judicial estoppel allows the district court to take this matter? Dismiss, to dismiss. It's a theory of dismissal. And the answer is, please note that even on page 21 of its brief, Odyssey specifically states that Judge Bassoon's decision, her holding, was for the purpose of conserving both judicial and party resources. Now, to answer the question, we have, according to the Montrose medical holding, we have irreconcilable different positions by one party, Odyssey. We have for the stipulation before the trial. We have against the stipulation after the trial. We have a threat to the court's integrity and authority by its simple disregard of that stipulation to orders rather than moving for some kind of relief under Rule 60 or 16. And we have a decision that's tailored to address the threat to the court's integrity, which is dismissal. Dismissal is also, I would say, justified under the sanctions provision of Rule 16F. That's why I asked you at the outset, why didn't you move to dismiss? I'm sorry? Why didn't you move to dismiss the appeal when it was filed? In this court? No, you're talking about this court or you're talking about the district court? We moved to dismiss in the district court. That's how all of this came about. This was a dismissal motion to Judge Bassoon. She granted it. She never, Judge Bassoon, never looked at the merits, which is why we argue now that there is no Section 158 jurisdiction. Judge Bassoon specifically stated that the district court was not going to review the merits but was going to dismiss the appeal and issue a final judgment dismissing the adversary proceeding based on the stipulation. I have no further questions. Do you have anything further? Very briefly, I just wanted to say a very brief word about the general municipal law argument. The statute does not in any way, in any imaginable way, support this argument that at the subcontractor level, the subcontractor should be credited with the same completion percentage that the prime contractor is credited with. That's their substantive argument, which we think the court should not be entertaining anyway for a lot of reasons that we stated. The general municipal law, GML, the language specifically states that the payments to the subcontractor shall reflect the percentage of work completed based on the value of the subcontract, not the prime contract. Odyssey looks for ways that it can counter, you know, dance around this dispositive language. It talks about, in the requisition approved by the owner, as if this somehow elevated Odyssey's completion percentage to a completion percentage credited at the prime contractor level. It talks about retainage limits under the general municipal law at page 36 of its brief. The money that's at issue here is not retainage money. Article 21 of the prime contract specifically states. This issue you briefed pretty well in your briefs. Okay. And we haven't asked any questions. This is heavy stuff to us, so thank you. I appreciate it. Your Honors, I have nothing more. If the court has nothing more, I want to thank you. Thank you. Just in time. Perfect timing. Thank you, Mr. Chairman. Thank you so much. Bye. Mr. Georgioulas, rebuttal. And I do have a question at the outset. Sure. One thing we can all agree on is that we have a three-paragraph stipulation, which means that the parties have agreed to the content in those three paragraphs, executed the stipulation, presented it to the court. The last sentence in paragraph one, which follows the statement relative to the court's determination as to who the breaching party is, and the reference to damages based upon that breach determination. The language I'm referring to, and thereupon, all of the parties, plural, pending claims, will be withdrawn and disposed of in their entirety with prejudice. How in the world, if you have agreed to withdraw your claims, can there be anything left to appeal? Those pending claims, Your Honor, are the three, conversion, the fourth contract, and the insurance rebate. Because the scenario is, let's say we decide. Again, it doesn't say that. The only pending claims are those. The bankruptcy, we had the trial liability. It ends. Let's say we elect not to appeal. At some point, there are still three pending claims. Those are the claims that had to be withdrawn. And then we proceed whether. If you have another claim, that's resolved with no appeal, you said. And then you withdraw. You're saying this is saying that you're withdrawing the other claims, not the one that was resolved that wasn't. Because it's saying the other claims says all the parties. Right. You can. No question. Even if you're arguing that it's not pending because that's. I have any interest. Most Reverend, when I want to ask you, you're curious about what I'm trying to. Yeah, absolutely. Good. Even if you take that position and you say pending claims only relates to the one that wasn't resolved and not appealed. The language would then be tantamount to withdrawing those pending, as you say, claims and disposing of it with prejudice. I don't I don't understand how that helps you. I don't think anything changes with regard to the finality at that stage of the proceeding, because as I think your your honor pointed out, it talks. I'm sorry. Judge McKee, you pointed out to counsel that it reads this proceeding, meaning this bankruptcy proceeding. It doesn't mean the entire dispute. And we rely on the fact that there is no clear expression of waiver. One of the you have to get the waiver. Do you? I mean, I forget finality. OK. If you have committed yourself conditioned upon the resolution of a liability liability determination by the bankruptcy judge to withdraw and dispose of all pending claims. Does it wait anything? You withdrawing them? No. Well, Judge Bond actually said the parties are to proceed to complete. That's for the stipulation. Judge Bond didn't say you need to sign and exchange the releases and those releases typically in a in a settlement situation are signed, held in escrow and then released after there's some finality. You're not telling us that you didn't really mean what you signed here, are you? Sounds like all the time. In that instance, my question to Mr. Spears is the why there wasn't any attempt to certify. There was nothing to certify. There was no question to certify because everything had been resolved or withdrawn. What? Why would you ask to certify something that's gone away? I think Judge Judge Bassoon actually modified the order to make it final. She then dismisses the appeal. I think at that point, there's jurisdiction under 1291. Apparently, that's what she tried to accomplish. And Judge Ambrose talked about the withdrawal of reference. The Pruitt case is the one with the mandamus. But I think it applies here as well. I mean, that's it looks like that's how she what she that's the process that she took in order to make the decisions that she made here. The point is, you can't really do that impliedly. You need and you have to do it in effect formally because you need to show. You need to show cause. Yes. But in that case, I don't think cause was shown. It was kind of a suicide. The decision, I would think. But you're arguing that the matter was properly before the district court. Were you not? We're arguing that, yes, we were properly. You can only really argue. Well, it's either final or she somehow withdrew the reference. But your better argument would be that it was the decision. There was a final decision. There was nothing left but something ministerial to do. Exactly. There was nothing left. We got it. We got it. That's the absolute. Would you like me to address the GML for a moment? Because now I don't need that. In fact, we've we've afforded afforded you more beyond. Yes, you have. Thank you. Thank you very much. Mr. Fastenberg, the panel will take the matter under advisement. And we'll ask the clerk to adjourn the proceedings.